No. 98-134

294 Mont. 17

977 P. 2d 1000

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 70

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JAMES R. BUTLER,

Defendant and Appellant.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael W. Clague, Public Defender, Butte, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Tammy K. Plubell, Assistant Attorney General, Helena, Montana; Robert M. McCarthy, Silver Bow County Attorney, Samm Cox, Deputy Silver Bow County Attorney, Butte, Montana

Submitted on Briefs: October 29, 1998

Decided: April 6, 1999

Filed:

No

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

**¶1. Pursuant to § 41-5-206, MCA (1997), James R. Butler, a youth, was charged in District Court with the crimes of attempted deliberate homicide and attempted robbery. The Second Judicial District Court, Silver Bow County, denied Butler's motion requesting it to declare § 41-5-206, MCA (1997), unconstitutional on the grounds that it violated his right to due process by allowing the prosecution to file an information directly in District Court rather than youth court without first affording him a hearing. The District Court subsequently entered a judgment of conviction against Butler based upon his pleas of guilty. Butler appeals. We reverse and remand.**

**¶2. The sole issue on appeal is whether the District Court violated Butler's right to due process of law, as guaranteed by Article II, Section 17 of the Montana Constitution and the Fourteenth Amendment to the United States Constitution, when it allowed the prosecution to file an information in District Court pursuant to § 41-5-206, MCA (1997), without first affording Butler a hearing.**

FACTUAL AND PROCEDURAL BACKGROUND

**¶3. On October 25, 1997, the Butte Silver Bow Law Enforcement Agency arrested Butler for attempting to rob a convenience store and shoot the store clerk. Butler was sixteen years old. On October 27, 1997, the youth court held a hearing as required by § 41-5-332, MCA, and it determined that there was probable cause to believe that Butler was a delinquent youth and that he should be retained in custody at the juvenile detention facility pending further proceedings.**

**¶4. The next day, October 28, 1997, the prosection filed a motion in District Court pursuant to § 41-5-206, MCA (1997), requesting leave to file an information in District Court charging Butler, as an adult, with attempted robbery, in violation of §**

45-5-401(1)(b), MCA, and attempted deliberate homicide, in violation of § 45-5-102, MCA, and § 45-4-103, MCA. The District Court granted the motion. It found probable cause to believe that Butler had committed the acts with which he was charged and that considering the severity of the acts and the interests of community protection, the case should be filed in District Court rather than youth court. The court did not hold a hearing prior to reaching its decision. Butler was not represented by counsel and had no opportunity to challenge the prosecution's allegations. Instead, the court based its findings solely upon the prosecution's affidavit. The District Court subsequently appointed a public defender to represent Butler, and the prosecution filed the information.

¶5. On December 11, 1997, Butler and the prosecution filed a pretrial agreement wherein Butler agreed to plead guilty to attempted robbery and attempted deliberate homicide, but reserved his right to challenge and appeal procedural pretrial issues. In return, the prosecution agreed to recommend that Butler be committed to the Montana Department of Corrections for 30 years. The prosecution further agreed to recommend that the Department place Butler in the Pine Hills Correctional Facility until his 18th birthday, after which Butler would be screened for placement in the Boot Camp Program. Finally, the prosecution agreed that the court should retain limited jurisdiction over the case until Butler had successfully completed the Boot Camp Program, at which time Butler could petition the court for a review of his sentence.

¶6. Butler filed a motion on December 16, 1997, requesting the District Court to declare § 41-5-206, MCA (1997), unconstitutional and to order that his case be disposed of in youth court. The court denied the motion, stating that the issue relating to the constitutionality of the statute should be decided by the Montana Supreme Court. The District Court sentenced Butler as an adult in accordance with the terms of the pretrial agreement. From this judgment, Butler appeals.

## STANDARD OF REVIEW

¶7. Resolution of this issue involves a question of constitutional law. The standard for reviewing conclusions of law is whether they are correct. Roosevelt v. Montana Dept. of Revenue, 1999 MT 30, __ Mont.__, ¶ 25, __ P.2d __, ¶ 25, 56 St. Rep. 125, ¶ 25 (citation omitted).

**¶8. All legislative enactments are presumed constitutional. The party challenging the constitutionality of a statute bears the burden of proving the statute unconstitutional beyond a reasonable doubt. Roosevelt, ¶ 26 (citations omitted).**

## OVERVIEW OF THE YOUTH COURT ACT

**¶9. We begin our analysis with a brief historical overview of the relevant provisions of the Youth Court Act. Prior to 1997, a youth could not be criminally prosecuted as an adult unless the youth court transferred jurisdiction over the case to the district court. Section 41-5-206 (5), MCA (1995). The Act provided that if the youth was charged with unlawful conduct that constituted a specific crime listed in the statute when the youth had attained a specified age, the State could file a petition in the youth court requesting the court to transfer the case to district court. Section 41-5-206, MCA (1995). Once the State filed the petition, the youth court had the discretion to decide whether to transfer the case. In exercising its discretion, the Act required the youth court to hold an evidentiary hearing to determine whether there was probable cause to believe that:**

(i) the youth committed the delinquent act alleged;

(ii) the seriousness of the offense and the protection of the community require treatment of the youth beyond that afforded by juvenile facilities; and

(iii) the alleged offense was committed in an aggressive, violent, or premeditated manner.

Section 41-5-206(1)(d), MCA (1995). In addition to the foregoing, the youth court was entitled to consider the following factors when making its decision:

(a) the sophistication and maturity of the youth, determined by consideration of the youth's home, environmental situation, and emotional attitude and pattern of living;

(b) the record and previous history of the youth, including previous contacts with the youth court, law enforcement agencies, youth courts in other jurisdictions, prior periods of probation, and prior commitments to juvenile institutions.

Section 41-5-206(2), MCA (1995). If, however, the youth was 16 years of age or older, and if the youth was charged with conduct that would constitute deliberate homicide, mitigated deliberate homicide or attempt of either of those crimes, the Act provided that the youth court "shall" grant the State's motion to transfer the case. Section 41-5-206(3), MCA (1995).

**¶10. In 1997, the Montana Legislature amended the Youth Court Act. Instead of allowing the youth court the discretion to transfer jurisdiction over certain cases to the district court, it now provides that the prosecution may file a motion directly in district court requesting leave to file an information in the district court to criminally prosecute the youth as an adult. Section 41-5-206, MCA (1997).**

**¶11. The prosecution's discretion to file such a motion, however, is not without limits. It can file such a motion only if the youth has attained a certain age and only if the youth is alleged to have committed one of the offenses listed within the statute at that age. Section 41-5-206(1), MCA (1997). If the youth is seventeen years of age and is alleged to have committed one of the offenses listed, the prosection "shall" file such a motion. Section 41-5-206(2), MCA (1997). In this case, the provisions the prosecution relied on when it requested leave to file an information against Butler are as follows:**

**Filing in district court prior to formal proceedings in youth court.** (1) The county attorney may, in the county attorney's discretion, file with the district court a motion for leave to file an information in the district court if:

(a) the youth charged was 12 years of age or older at the time of the conduct alleged to be unlawful and the unlawful act would if it had been committed by an adult constitute:

. . . .

(iv) the attempt, as defined in 45-4-103, of . . . deliberate . . . homicide; or

(b) the youth charged was 16 years of age or older at the time of the conduct alleged to be unlawful and the unlawful act is one or more of the following:

. . . .

(iv) robbery as defined in 45-5-401[.]

Section 41-5-206(1)(a)(iv) and (b)(iv), MCA (1997).

**¶12. The Act further provides:**

The district court shall grant leave to file the information if the court finds that there is probable cause to believe that the youth has committed the alleged offense and that, considering the seriousness of the offense and in the interests of community protection, the case should be filed in the district court.

Section 41-5-206(3), MCA (1997).

**¶13. Although the prior version of the Act required the youth court to hold a hearing prior to transferring the case to District Court (unless the youth was 16 years old and was charged with deliberate homicide, mitigated homicide or attempt), the amended version of the Act is silent as to whether the district court must hold a hearing prior to rendering its decision. However, the District Court in this case interpreted the Act to mean that such a hearing is not required.**

**¶14. Finally, the Act provides that the youth court has "exclusive original jurisdiction" in all proceedings under the Montana Youth Court Act, except for cases filed in district court under § 41-5-206, MCA, and other situations not relevant here where the youth court shares concurrent jurisdiction with other courts. Section 41-5-203, MCA (1997). Once the prosection actually files an information in district**

court, "jurisdiction of the youth court over the youth with respect to the acts alleged in the information" is "terminated." Section 41-5-206(4), MCA (1997).

## DISCUSSION

**¶15. Did the District Court violate Butler's right to due process of law, as guaranteed by Article II, Section 17 of the Montana Constitution and the Fourteenth Amendment to the United States Constitution, when it allowed the prosecution to file an information in District Court pursuant to § 41-5-206, MCA (1997), without first affording Butler a hearing?**

**¶16. The due process clause of the Fourteenth Amendment to the United States Constitution provides that "no state shall deprive any person of life, liberty, or property, without due process of the law." Article II, Section 17 of the Montana Constitution similarly provides that "[N]o person shall be deprived of life, liberty, or property without due process of law."**

**¶17. Butler contends that § 41-5-206, MCA (1997) of the Youth Court Act violates his right to due process under both the federal and the state constitutions, because it did not require the court to hold a hearing prior to allowing the prosecution to file an information in the District Court. In support of his position, he relies primarily on the United States Supreme Court decision in Kent v. United States (1966), 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84.**

**¶18. In Kent, the juvenile was accused of committing robbery and rape. The juvenile court in the District of Columbia waived jurisdiction over the juvenile and directed that he be held for trial for the alleged offenses as an adult in the U.S. District Court for the District of Columbia. In so doing, the juvenile court judge did not hold a hearing; did not rule on various motions filed by the juvenile's counsel; did not confer with the juvenile, his parents or his counsel; and did not make any findings or reasons for the waiver. Kent, 383 U.S. at 546, 86 S.Ct. at 1049-50, 16 L.Ed.2d at 89. After the case was transferred to District Court, a grand jury indicted the juvenile for eight counts, including two counts of housebreaking, robbery and rape, and one of housebreaking and robbery. Kent, 383 U.S. at 548, 86 S.Ct. at 1051, 16 L.Ed.2d at 90. The juvenile moved the District Court to dismiss the indictment on the grounds that the waiver of juvenile court jurisdiction was invalid. The court denied the motion, and on a subsequent appeal after his conviction, the United States Court of**

Appeals for the D.C. Circuit affirmed. <u>Kent</u>, 383 U.S. at 549-50, 86 S.Ct. at 1051, 1052, 16 L.Ed.2d at 90-91.

¶19. After granting certiorari, the United States Supreme Court reversed. It noted that the decision to transfer the case to District Court was as potentially important to the juvenile as the difference between five years' confinement if the case was handled by the juvenile court, and the death sentence, if the case was processed through the District Court. <u>Kent</u>, 383 U.S. at 557, 86 S.Ct. at 1055, 16 L.Ed.2d at 95. The Supreme Court concluded that it was "clear beyond dispute that the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile." <u>Kent</u>, 383 U.S. at 556, 86 S.Ct. at 1055, 16 L.Ed.2d at 94. It stated:

[T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony -- without hearing, without effective assistance of counsel, without a statement of reasons. It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner.

<u>Kent</u>, 383 U.S. at 554, 86 S.Ct. 1053-54, 16 L.Ed.2d at 93. The Supreme Court therefore held that the juvenile's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution were violated. It stated that "as a condition to a valid waiver order, [the juvenile] was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision." Kent, 383 U.S. at 557, 86 S.Ct. at 1055, 16 L.Ed.2d at 95.

¶20. In the case before this Court, the State concedes that under <u>Kent</u> and its progeny, the due process requirements of the federal constitution guarantee a youth a hearing prior to removing a case from the juvenile justice system. However, it contends that the hearing requirement is limited to those situations in which the state has a judicial waiver statutory scheme for bringing a youth into adult court. According to the State, each of the fifty states employs one of three distinct statutory mechanisms by which a youth is removed from the civil arena of youth court and placed into the criminal arena of adult court. <u>See</u>, generally, State In Interest of A.L. (N.J. Super. Ct. App. Div. 1994), 638 A.2d 814, 817-18 (describing these three mechanisms). The first mechanism, judicial waiver, is one in which the court exercises its discretion to place a juvenile in the adult court system. The State contends that this is the type of system used in the <u>Kent</u> case, this is the type of

system Montana used prior to the 1997 amendments to the Youth Court Act, and this is the only system which requires a hearing according to Kent. The other two mechanisms, known as the "legislative offense exclusion" and "prosecutorial waiver" mechanisms, have been enacted over the last few decades due to a national trend in which states have abandoned the rehabilitation model for dealing with youth offenders in favor of more punishment-oriented systems which facilitate the criminal prosecution of youths who commit serious crimes. See State In Interest of A.L., 638 A.2d at 818. Under the legislative offense exclusion system, the state legislature omits certain categories of offenses from juvenile court jurisdiction. Under the prosecutorial waiver mechanism, the statute provides for concurrent jurisdiction between juvenile and criminal courts, and the prosecutor, not the judge, has the discretion to determine in which forum to charge the youth.

¶21. The State concedes that if a Montana court had discretion to determine whether the youth's case should be processed by the youth court system or the adult criminal system, then Kent would control and Butler would be entitled to a hearing. However, the State argues that after the 1997 amendments to the Youth Court Act, Montana now has a prosecutorial waiver mechanism. It argues that under § 41-5-206, MCA (1997), the prosecution has the sole discretion to determine whether to file an information in the district court charging the youth with a crime.

¶22. The State further reasons that because the decision rests with the prosecutor and not the court, due process does not guarantee the youth a right to hearing, no matter how "critical" the prosecutor's decision is to the youth's life. The State justifies its position that a hearing is required only when the court, but not the prosecution, exercises its discretion by pointing to the following excerpt:

"Judicial proceedings must be clothed in the raiment of due process, while the processes of prosecutorial decision-making wear very different garb. It is one thing to hold, as we have, that when a state makes waiver of a juvenile court's jurisdiction a judicial function, the judge must cast about the defendant all of the trappings of due process, but it does not necessarily follow that a state or the United States may not constitutionally treat the basic question as a prosecutorial function. . . . [T]he character of the proceeding, rather than its consequences to the accused, are largely determinative of his rights. . . . [T]he guaranty of a hearing found in the due process clause of the Fifth [and Fourteenth] Amendment[s] has traditionally been limited to judicial and quasi-judicial proceedings. It has never been held applicable to the processes of prosecutorial decision-making."

State v. Angel C. (Conn. 1998), 715 A.2d 652, 666 (citing Cox v. United States, 473 F.2d 334, 336 (4th Cir. 1973), cert. denied, 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1973)).

¶23. We cannot accept the State's position, even assuming we accept the State's framework for analyzing this very important issue. The State's entire argument is premised upon its insistence that Montana's statute leaves it solely within the prosecution's discretion to determine whether to place a youth in the adult criminal system. However, the plain language of the statute states otherwise.

¶24. The Act provides that it is within the prosecution's discretion to *move* the district court for leave to file an information in the district court if the youth has attained a certain age and is alleged to have engaged in certain unlawful conduct at that age. Section 41-15-206(1), MCA (1997). However, the prosecution's discretion ends at that point. The ultimate decision rests with the district court which must make specific findings that (1) there is probable cause to believe that the youth has committed the alleged offense, and that (2) considering the seriousness of the offense and in the interests of community protection, the case should be filed in the district court. Section 41-5-206(3), MCA (1997).

¶25. It is no answer to simply state that language requiring the District Court to make these specific findings is superfluous because the legislature already set forth which offenses are serious offenses that jeopardize the community protection. The plain language of the Act specifically provides that it is the court itself that must make such a finding. Section 41-5-206(3), MCA (1997). Any other interpretation would render the language in that provision meaningless, contrary to this Court's obligation to interpret the Act in a manner that will give each provision meaning and effect. Section 1-2-101, MCA.

¶26. Accordingly, we conclude that Montana does not have a pure prosecutorial waiver system as the State contends. Instead, the decision as to whether there is probable cause to believe that the youth committed the offense and whether the seriousness of the offense and the interests of community protection are such that the case should be brought within the district court rests with the district court. The court's decision in this regard is as potentially important to a youth as the difference between being detained until he is 25 years' of age if the case is processed in youth court, and losing his life if the case is processed in district court. Section 41-5-208, MCA (1997) and § 45-5-102(2), MCA. In Montana, as in the District of Columbia in

the <u>Kent</u> decision, this decision is critically important. <u>Kent</u>, 383 U.S. at 556, 86 S.Ct. at 1055, 16 L.Ed.2d at 94.

¶27. As the State has acknowledged, all "[j]udicial proceedings must be clothed in the raiment of due process . . . . [and] the judge must cast about the defendant all of the trappings of due process." <u>Angel C</u>, 715 A.2d at 666 (citation omitted). The Supreme Court has held that due process requires the court to hold a hearing. <u>Kent</u>, 383 U.S. at 557, 86 S.Ct. at 1055, 16 L.Ed.2d at 95. In this case, the court based its decision solely upon the affidavit of the prosecution. Butler did not have the opportunity with the assistance of counsel to challenge the prosecution's allegations that there was probable cause or that the seriousness of the crime or the interests of community protection required an information to be filed in District Court. We conclude that this failure violated his due process rights under the federal constitution.

¶28. In support of its position, the State also points to this Court's decision in Matter of Wood (1989), 236 Mont. 118, 768 P.2d 1370. The version of the statutory provision at issue in <u>Wood</u> provided that:

The court shall grant the motion to transfer [the case from juvenile court to district court] if the youth was 16 years old or older at the time of the conduct alleged to be unlawful and the unlawful act would constitute deliberate homicide as defined in 45-5-102, mitigated deliberate homicide as defined in 45-5-103, or the attempt, as defined in 45-4-103, of either deliberate or mitigated deliberate homicide if the act had been committed by an adult.

<u>Wood</u>, 236 Mont. at 120, 768 P.2d at 1371-72 (citing § 41-5-206(3), MCA (1987)).

¶29. In <u>Wood</u>, we held that the failure of § 41-5-206(3), MCA (1987), to provide a youth with a hearing prior to transferring his case to district court did not violate his right to due process under the Fourteenth Amendment to the United States Constitution. <u>Wood</u>, 236 Mont. at 123, 768 P.2d at 1373. The State contends that <u>Wood</u> controls the disposition of this case. In contrast, Butler alternatively argues that <u>Wood</u> is distinguishable or should be overruled. We conclude that <u>Wood</u> is inapposite.

¶30. The provision at issue in <u>Wood</u> fell within the "prosecutorial waiver"

mechanism whereby transfer was automatic upon motion of the prosecutor and involved no judicial decision-making. The case before the Court today, however, involves a statutory provision that the legislature has significantly amended since the Wood decision. As explained earlier, the revised provision now requires the district court to make specific findings. Section 41-5-206(3), MCA (1997). As such, those findings must be made in a manner that satisfies the constitutional requirement of due process and fairness.

¶31. Finally, the State cites numerous cases which it contends supports its position that Montana's Act is a prosecutorial discretion statute. However, in each of those cases, the statutes at issue were similar to the provision at issue in Wood, in that they either provided for automatic transfer of a case to the adult criminal court where the youth had attained a certain age and was alleged to have committed a certain crime, or they provided for automatic transfer upon motion by the prosecution. Those statutes did not provide for any judicial decision-making as does Montana's statute. See, e.g., People v. Hughes (Colo. Ct. App. 1997), 946 P.2d 509, 513 (statute allowed prosecutor to file an information in the district court based solely upon the age and alleged offense), cert. denied, 118 S.Ct. 1369, 140 L.Ed.2d 517, overruled on other grounds by Valdez v. People (Colo. 1998), 966 P.2d 587; Hansen v. State (Wyo. 1995), 904 P.2d 811, 816 (allowing cases to be commenced in district court based upon age and alleged offense and in certain circumstances other factors to be considered solely by the prosecutor); Angel C., 715 A.2d at 662 (statute was "an automatic, mandatory transfer statute with the transfer based exclusively on the age of the defendant and the offense charged").

¶32. Based upon the foregoing, we hold that the District Court violated Butler's right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution when it allowed the prosecution to file an information in District Court pursuant to § 41-5-206, MCA (1997), without first affording Butler a hearing. There is no need, however, to declare the entire provision unconstitutional as Butler requests. Instead, we simply hold that due process requires the district court to hold a hearing when rendering a decision under § 41-5-206(3), MCA (1997).

¶33. Because we hold that the federal constitution guarantees a youth a right to a hearing prior to allowing the prosecution to file an information in the district court, we need not address whether Montana's counterpart affords more protection in certain circumstances.

**¶34. Reversed and remanded for further proceedings consistent with this opinion.**

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART