JUSTICE TRIEWEILER
delivered the Opinion of the Court.
¶1 The Petitioner, Debra Stavenjord, filed a petition for hearing before the Workers’ Compensation Court for the State of Montana in which she alleged that she had contracted an occupational disease on April 1, 1998, arising from her employment with Prairie Nest Ranch and that her employer was insured against workers’ compensation claims by the Respondent, Montana State Fund. She contended that because the benefits provided to her for partial disability pursuant to § 39-72-405(2), MCA (1997), were less than provided for the same partial disability pursuant to § 39-71-703, MCA (1997), of the Workers’ Compensation Act, she was denied equal protection of the law in violation of Article II, Sec. 4 of the Montana Constitution. After the parties agreed on the relevant facts, the Workers’ Compensation Court held that based on our decision in Henry v. State Compensation Ins. Fund, 1999 MT 126, 294 Mont. 449, 982 P.2d 456, Stavenjord had been denied equal protection of the law and entered judgment for her in the amount she would have received pursuant to the Workers’ Compensation Act. The Montana State Fund appeals from that conclusion. We affirm the judgment of the Workers’ Compensation Court.
¶2 The Montana State Fund raises the following issues on appeal:
¶3 1. Whether the Workers’ Compensation Court abused its discretion when it declined to reopen the record at the request of the Respondent to allow additional evidence of the historical and anatomical differences between injuries and occupational diseases.
¶4 2. Whether the Workers’ Compensation Court erred when it concluded that § 39-72-405, MCA (1997), of the Occupational Disease Act violated the equal protection clause of the Montana Constitution.
DISCUSSION
¶5 The parties agreed to the following facts which form the basis for the Workers’ Compensation Court’s decision:
¶6 Debra Stavenjord contracted an occupational disease arising out of and in the course of her employment with Prairie Nest Ranch in *469 Cascade County, Montana, on April 1,1998, when she was diagnosed with epicondylitis of both elbows. She had surgery on both elbows. She also had cervical disc removal surgery. (It is not clear from the facts whether the cervical disc removal surgery was related to her occupational disease.)
¶7 At the time of her injury, Stavenjord’s employer was enrolled in compensation plan III of the Workers’ Compensation Act and its insurer was the State Compensation Insurance Fund.
¶8 After Stavenjord reached maximum medical improvement, she was given a 12% impairment rating of the whole person. As a result of her condition, her lifting ability had been diminished. She had previously been able to perform heavy work but as a result of her condition, could only perform work in the “light” category.
¶9 Stavenjord sustained a wage loss of more than $2 per hour and would have been entitled to a permanent partial disability rate of $198 under the Montana Workers’ Compensation Act. Because of the extent of her impairment, her age (45 years), her education (11th grade), her lifting restrictions and her wage loss, she would have been entitled to $27,027 for permanent partial disability benefits if her entitlement was calculated pursuant to § 39-71-703, MCA (1997), the partial disability provision of the Montana Workers’ Compensation Act.
¶10 However, the maximum that Stavenjord could recover pursuant to § 39-72-405, MCA (1997), of the Occupational Disease Act, even though she suffered a wage loss and could no longer return to her former employment, was $10,000.
¶11 In the Workers’ Compensation Court, Stavenjord argued that § 39-72-405(2), MCA (1997), violated her right to equal protection of the law by limiting her to less compensation for her disability than she would be entitled to for the same degree of disability under the Workers’ Compensation Act. She invoked her right to equal protection pursuant to Article II, Section 4 of the Montana Constitution. She contended that her situation was similar to that of the petitioner in Henry v. State Compensation Ins. Fund, 1999 MT 126, 294 Mont. 449, 982 P.2d 456, and that the Workers’ Compensation Court was bound by that decision.
¶12 In response, the State Fund argued that benefits provided pursuant to § 39-71-405(2), MCA, are not technically “partial disability” benefits; the class of claimants entitled to benefits under the Workers’ Compensation Act are not similarly situated to those claiming benefits pursuant to the Occupational Disease Act; and that the public policy set forth at § 39-71-105, MCA (1997), to provide *470 benefits to injured or diseased workers in an expeditious fashion with a minimal amount of legal involvement provided a rational basis for treating the two classes differently. The State Fund also contended that this state’s ability to compete with other states economically would be affected by the nature and amount of benefits provided for work-related injuries and diseases and that the disparate treatment of injured and diseased workers furthered that economic interest.
¶13 The Workers’ Compensation Court held that its decision was compelled by our decision in Henry v. State Compensation Ins. Fund and that the broad language used in that opinion contraindicated limiting its affect to only the type of benefits (vocational rehabilitation benefits) at issue in that case. As a result, the Workers’ Compensation Court held that Stavenjord was entitled to permanent partial disability benefits in the amount of $27,027.
¶14 After the Workers’ Compensation Court’s decision and judgment were entered, the State Fund moved for reconsideration or rehearing and for an order re-opening evidence. The State Fund sought to offer additional evidence of the historical difference between injuries and occupational diseases. Those motions were denied.
STANDARD OF REVIEW
¶15 Whether to reopen a case for the introduction of further evidence after the case has been submitted to the court is within the discretion of the trial court. Its ruling, upon the request to reopen, will not be disturbed by this Court unless there has been a clear abuse of discretion. Cole v. Helena Light & Ry. Co. (1914), 49 Mont. 443, 143 P. 974.
¶16 The Workers’ Compensation Court’s decision on the merits was based on its construction of constitutional law. We review conclusions of law to determine whether they are correct. See Henry, ¶ 10 (citing State v. Butler, 1999 MT 70, ¶ 7, 294 Mont. 17, ¶ 7, 977 P.2d 1000, ¶ 7).
ISSUE ONE
¶17 Did the Workers’ Compensation Court abuse its discretion when it declined to reopen the record at the request of the Respondent to allow additional evidence of the historical and anatomical differences between injuries and occupational diseases?
¶18 The State Fund contends that the Workers’ Compensation Court abused its discretion when it denied its motion to reopen evidence so that it could offer statistical evidence demonstrating that most occupational disease claims do not involve herniated intervertebral *471 discs such as were at issue in Henry and that, therefore, the traditional reasons for treating occupational diseases differently from injuries are as applicable now as ever.
¶19 In Cole, we held that:
The reopening of a case for the introduction of further evidence after it has been closed is within the discretion of the trial court. Its ruling upon the request to reopen will not be disturbed by the appellate court, unless there has been a clear abuse of discretion. [Citations omitted.]
Cole, 49 Mont. at 453, 143 P. at 976.
¶20 In Kipp v. Wong (1974), 163 Mont. 476, 484, 517 P.2d 897, 902, we stated:
Ordinarily neither denial of reopening for testimony of a witness available during reception of evidence at the trial nor denial of reopening absent a showing of a witness’s qualifications and the materiality of his testimony constitutes an abuse of discretion by the trial court.
¶21 We conclude that the State Fund could have offered the evidence for which it sought to reopen its case prior to the close of evidence and that it did not demonstrate the materiality of the evidence in support of its motion to reopen. The State Fund sought to prove the nature of most occupational disease claims and their similarity to the traditional occupational diseases discussed by this Court in Eastman v. Atlantic Richfield Co. (1989), 237 Mont. 332, 777 P.2d 862. However, Stavenjord’s challenge to the constitutionality of § 39-72-405(2), MCA (1997), was not based on the traditional treatment of occupational diseases nor the types of claims that are currently being brought by others. It was based upon the current definition of occupational disease as opposed to the current definition of injury and based upon her own condition of epicondylitis, which the State concedes is an inflammatory disease of the connective tissues of the elbow which develops over time. Stavenjord’s affliction is exactly the kind of condition that would traditionally have been treated as an injury under the Workers’ Compensation Act but is no longer treated as such based upon definitional changes made to § 39-71-703, MCA, and § 39-72-405(2), MCA, in 1987. For example, in Hoehne v. Granite Lumber Co. (1980), 189 Mont. 221, 615 P.2d 863, we held that Carpel Tunnel Syndrome caused over time by the continual strain involved in lifting and stacking lumber was an injury pursuant to the definition formerly found at § 39-71-119(1), MCA, even though it could not be related to any specific incident and “developed gradually” over time. *472 We held that pursuant to the pre-1987 definition of injury, all that had to be shown was a chain of actions resulting in physical harm to some part of the body from unusual strain. Hoehne, 189 Mont. at 225, 615 P.2d at 865.
¶22 Therefore, because there is no indication that the evidence which the State Fund sought to offer following trial was not available prior to trial and because the evidence of other claims for occupational disease were not material to the issue involved in this case, we conclude that the Workers’ Compensation Court did not abuse its discretion when it denied the State Fund’s motion to reopen the evidence.
ISSUE 2
¶23 Did the Workers’ Compensation Court err when it concluded that § 39-72-405, MCA (1997), of the Occupational Disease Act violated the Equal Protection Clause of the Montana Constitution?
¶24 The State Fund contends that the Workers’ Compensation Court erred by concluding that § 39-72-405(2), MCA (1997), violates Stavenjord’s right to equal protection of the law because 1) injured workers and those with occupational diseases are not similarly situated; 2) if this Court concludes they are similarly situated, there is a legitimate government interest in treating the two classes differently; and 3) the manner in which the legislature has chosen to treat the two classes is rationally related to that legitimate interest. The State Fund also contends that this case presents facts more similar to those before the Court in Eastman v. Atlantic Richfield Co. (where the Court was asked to address the equal protection issue based on a difference in the amount of benefits provided) than Henry v. State Compensation Ins. Fund (where workers with occupational diseases were completely denied the vocational rehabilitation benefit at issue.) Finally, the State Fund asks that we limit our holding in Henry to the unique factual circumstances presented in that case where a worker was denied benefits under the Workers’ Compensation Act simply because his herniated intervertebral disc was caused over two work shifts rather than one.
¶25 Stavenjord, of course, contends that her right to equal protection was violated for the same reason that we concluded that Jerry Henry’s right to equal protection was violated and that the result in this case is compelled by our decision in that case.
¶26 Before considering our decisions in Eastman and Henry and applying them to the circumstances before us, it is appropriate to *473 consider the statutory framework applicable to Debra Stavenjord’s claim.
¶27 The legislature’s objective for enactment of the 1997 Workers’ Compensation Act and Occupational Disease Act as they relate to compensation of workers who sustain a reduction in their earning capacity due to a work-related injury or disease is set forth in the legislature’s declaration of public policy found at § 39-71-105, MCA (1997), which provides in relevant part as follows:
For the purposes of interpreting and applying Title 39, chapters 71 and 72, the following is the public policy of this state:
(1) It is an objective of the Montana workers’ compensation system to provide, without regard to fault, wage supplement and medical benefits to a worker suffering from a work-related injury or disease. Wage-loss benefits are not intended to make an injured worker whole; they are intended to assist a worker at a reasonable cost to the employer. Within that limitation, the wage-loss benefit should bear a reasonable relationship to actual wages lost as a result of a work related injury or disease. [Emphasis added.]
¶28 The manner in which the legislature sought to provide a partial wage loss benefit for workers suffering an “injury” as defined at § 39-71-119, MCA (1997), is set forth at § 39-71-703, MCA (1997), of the Workers’ Compensation Act. Without setting forth that statute in its entirety, it provides for a partial disability benefit based on the injured worker’s actual wage loss, permanent impairment, age, education and occupational limitations. The parties agree that based on those factors, if Stavenjord had met the definition of “injury,” she would have been entitled to permanent partial disability benefits in the amount of $27,027.
¶29 However, the legislature sought to compensate workers who suffer a wage loss as the result of an occupational disease at § 39-72-405(2), MCA (1997), of the Occupational Disease Act which provides that when an employee cannot return to his or her employment due to an occupational disease and suffers a wage loss as a result, that employee can be paid an amount not exceeding $10,000.
¶30 We first considered disparate legislative treatment under the Workers’ Compensation Act and the Occupational Disease Act in Eastman. In that case, the claimant had been employed as a welder for Atlantic Richfield Company’s aluminum plant from 1977 until 1985. He was diagnosed with chronic obstructive pulmonary disease leading to steroid dependency which caused severe physical and emotional side affects. He petitioned the Workers’ Compensation Court for workers’ *474 compensation benefits based on his contention that his condition had been aggravated by a single incident which led to smoke and fume inhalation while at work. The Workers’ Compensation Court held that he suffered from an occupational disease and was limited to $10,000 of benefits pursuant to the Occupational Disease Act.
¶31 Eastman appealed the Workers’ Compensation Court decision. However, according to the dissenting opinion, Eastman was:
[Fjorced to surmount hurdles that would challenge even the greatest trial tactician. He appears before this Court pro se because his attorney, after collecting his fee, merged his law firm with the firm representing Arco.
Eastman, 237 Mont. at 343, 777 P.2d at 868 (Hunt, J., dissenting). ¶32 Whatever the reason, Eastman filed his appeal and his brief on appeal without the benefit of counsel. Furthermore, the equal protection issue for which this Court’s opinion in Eastman is cited, had not even been raised in the Workers’ Compensation Court when he was represented by counsel. Normally this Court would not reach a constitutional issue under those circumstances. Currently this Court would at least not allow the result to be cited a precedent under those circumstances. However, in Eastman the Court, in a 4-3 opinion, acknowledged the general rule and then, without the benefit of adequate briefing by Eastman, decided the issue anyway. The Court stated:
It is a general rule that new issues may not be raised for the first time on appeal. [Citation omitted.] However, this Court “reserves to itself the power to examine constitutional issues that involve broad public concerns,” and even if raised for the first time on appeal, this Court can hear the issue if the alleged error affects the substantial right of a litigant. [Citation omitted.] Claimant has not briefed his constitutional contentions in detail. Nonetheless, considering the nature of such contentions as well as his pro se status, we will consider his constitutional challenges.
Eastman, 237 Mont. at 337, 777 P.2d at 865 (emphasis added).
¶33 The Court then went on to decide the constitutional rights of the pro se claimant whose trial counsel had not raised the constitutional issue and who had not briefed his constitutional contentions in detail adversely to the claimant. More importantly, the Court decided the issue based on the definition of “injury” found at § 39-71-119, MCA (1985) -not the definition at issue in this case. See Eastman, 237 Mont. at 341, 777 P.2d at 867.
¶34 In Eastman, the Court first concluded that no fundamental right *475 was at issue and that the disparate treatment of injured and diseased workers should be analyzed under the rational basis test which required a legitimate government objective which bore some rational relationship to the classifications in question. The Court proceeded to discuss the historical substitution of the no-fault compensation act for the type of injuries that were the subject of common law liability for employers and the more recent enactment of the Occupational Disease Act in 1959 as the incidents of devastating diseases in the work place also increased. Eastman, 237 Mont. at 338-39, 777 P.2d 865-66. Then, without further analysis, the Court concluded that there was a rational basis for the enactment of the Occupational Disease Act and that Eastman, the pro se claimant, "... has failed to show that the legislature is required to award the same or comparable benefits under the Occupational Disease Act as compared to the Workers’ Compensation Act.”
¶35 The Court concluded without further explanation that:
We hold that there is a rational basis for the benefits awarded trader the Occupational Disease Act and that the claimant has failed to establish a violation under the equal protection clauses of the Montana Constitution and of the Constitution of the United States.
Eastman, 237 Mont. at 339, 777 P.2d at 866.
¶36 Ten years later, following substantial revision to the definitions of “injury” and “occupational disease” by the 1987 Legislature, this Court considered a second challenge to disparate treatment of workers with “injuries” and workers with “occupational diseases” in Henry. In that case, the claimant, Jerry Henry, suffered a herniated intervertebral disc in his back while moving and lifting appliances for his employer. However, the injury apparently occurred over more than one work shift because it was treated as an occupational disease. After reaching maximum medical improvement, Henry sought but was denied rehabilitation benefits because they were not available under the Occupational Disease Act even though Henry was unable to return to the job he performed at the time of his injury as a result of his herniated disc. On appeal, Henry contended that he was denied equal protection of the law based on the fact that he was denied benefits for an occupational disease that were available pursuant to the Workers’ Compensation Act if he had been “injured.”
¶37 We began our analysis with a historical review of the Workers’ Compensation Act and the Occupational Disease Act. We acknowledged, as we did in Eastman, that the workers’ compensation *476 system is an outgrowth of tort law, Henry, ¶ 12; that the workers’ compensation system was not originally designed to compensate workers suffering from occupational diseases, Henry, ¶ 13; but that due to the frequency of diseases such as silicosis and asbestosis in the work place, the Occupational Disease Act was finally enacted in Montana in 1959. Henry, ¶ 14. We noted that based on the historical circumstances that gave rise to each act, an “injury” was defined differently from an “occupational disease” but that in 1987, those terms were significantly redefined so that now, rather than focusing on the nature of the medical condition, the terms are differentiated based on the number of work shifts over which a worker contracts an affliction. Henry, ¶¶ 15 and 18.
¶38 We pointed out that the public policy of the 1987 Workers’ Compensation Act and Occupational Disease Act, as it relates to vocational rehabilitation benefits, was set forth in § 39-71-105(2), MCA (1987), where the legislature provided that:
[I]t is an objective of the workers’ compensation system to return a worker to work as soon as possible after the worker has a suffered a work related injury or disease.
¶39 We pointed out, however, that vocational rehabilitation benefits for the purpose of getting workers back to work were only provided for in the Workers’ Compensation Act and not the Occupational Disease Act.
¶40 In Henry, for the purposes of equal protection analysis of benefits provided to injured or diseased workers, we applied the rational basis test and stated that:
The rational basis test requires the government to show (1) that the statute’s objective was legitimate, and (2) that the statute’s objective bears a rational relationship to the classification used by the legislature. Stated another way, the statute must bear a rational relationship to a legitimate governmental interest. [Citations omitted.]
Henry, ¶¶ 32-33.
¶41 We identified the Legislature’s objective as the declaration of public policy previously set forth from § 39-71-105(2), MCA (1987), and agreed that the early return to work of an employee following an injury or disease is a legitimate objective. Henry, ¶¶ 34-35. However, we held that elimination of workers suffering occupational diseases from access to rehabilitation benefits bore no rational relationship to the government objective of returning workers to work as soon as possible. We held that there was no rational basis for providing *477 rehabilitation benefits to workers based simply on the number of work shifts over which a worker is injured. Henry, ¶¶ 38-39. Furthermore, we held that economic reasons are not sufficient justification for treating the class of workers injured during one shift differently from the class of workers injured from activity or events that occurred over more than one work shift. Henry, ¶ 40.
¶42 We distinguished Henry from Eastman for two reasons. The first was that in Eastman, the Court was concerned with the degree of benefits awarded to a similarly situated claimant while in Henry one group of similarly situated claimants was totally denied a type of benefit. It is on that language that the State Fund now relies for its argument that this case is more similar to Eastman than to Henry. However, we also distinguished Eastman for the following reason which is equally applicable to this case:
Second, Eastman filed his claim for compensation benefits in 1985, prior to the 1987 amendments to the WCA and the ODA. As pointed out earlier, after the 1987 amendments to the WCA and the ODA, the definitions of “injury’ and “occupational disease” no longer focus on the nature of the medical condition, but rather focus on the number of work shifts over which the worker incurs an injury. Thus, the historical justification for treating workers differently under the WCA and the ODA no longer exists. Indeed, the entire underpinnings of Eastman have evaporated, rendering its continued validity questionable.
Henry, ¶ 43.
¶43 In Henry, we concluded:
[T]hat providing rehabilitation benefits to workers covered by the WCA, but not to workers covered by the ODA, is not rationally related to the legitimate governmental interest of returning workers to work as soon as possible after they have suffered a work related injury. We hold that the ODA violates the equal protection clause of the Montana Constitution to the extent that it fails to provide vocational rehabilitation benefits ....
Henry, ¶ 45.
¶44 We conclude that our reasoning in Henry is equally applicable to the facts before us and that our holding in Henry compels the result reached by the Workers’ Compensation Court.
¶45 As we have previously stated, legislative enactments are presumed constitutional and the party challenging the constitutionality of a statute bears the burden of proving the statute unconstitutional beyond a reasonable doubt. State v. Butler, 1999 MT *478 70, ¶ 8, 294 Mont. 17, ¶ 8, 977 P.2d 1000, ¶ 8.
¶46 As we did in Henry, we identify the two classes involved in the present case as those workers whose benefits are provided for pursuant to the Workers’ Compensation Act and those workers whose benefits are provided for pursuant to the Occupational Disease Act. However, since 1987, they are distinguished merely by the number of work shifts over which their work-related affliction is sustained. Therefore, as in Henry, the two classes on appeal remain “(1) workers who suffer a work related injury on one shift; and (2) workers who suffered a work related injury on more than one work shift.” Henry, ¶ 27. We conclude that they are similarly situated because regardless of the number of days over which their condition occurs or the mechanism which causes their affliction, they are, for purposes of the facts in this case, both physically impaired as a result of work related activity and both in need of wage supplement benefits to compensate for the impairment to their earning capacity.
¶47 We identify the government’s objective or interest in this case by the declaration of public policy found at § 39-71-105(1), MCA (1997), as to provide a wage loss benefit which bears “a reasonable relationship to actual wages lost as a result of a work-related injury or disease.” (Emphasis added). However, we conclude that the disparate treatment of disabled workers based simply on the length of time over which their injury or disease is sustained is not rationally related to that legitimate governmental interest.
¶48 Therefore, we conclude that providing partial disability benefits to a person in Stavenjord’s situation in the amount of $27,027 under the Workers’ Compensation Act but limiting her wage supplement to $10,000 under the Occupational Disease Act violates the Equal Protection Clause found at Article II, Section 4 of the Montana Constitution. For that reason, we conclude that our holding in Eastman v. Atlantic Richfield Company is not applicable to those wage supplement benefits provided for at § 39-71-703, MCA, and § 39-72-405(2), MCA, since 1987 and we affirm the decision and judgment of the Workers’ Compensation Court.
JUSTICES REGNIER, NELSON, COTTER and LEAPHART concur.