No. 01-663

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 80

CASSANDRA SCHMILL,

        Petitioner and Respondent,

   v.

LIBERTY NORTHWEST INSURANCE CORP.,

        Respondent, Appellant and Insurer for

MURALT'S TRUCK PLAZA,

        Employer.

APPEAL FROM:    Workers' Compensation Court, State of Montana
                    The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Larry W. Jones, Liberty Northwest Insurance Corp., Missoula, Montana

        For Respondent:

                Laurie Wallace, Bothe & Lauridsen, P.C., Columbia Falls, Montana

        For Amicus Montana State Fund:

                David A. Hawkins, State Compensation Insurance Fund, Helena, Montana

                    Submitted on Briefs:  February 13, 2003

                              Decided:  April 10, 2003

Filed:

                                 _____
                                              Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Petitioner, Cassandra Schmill, filed a petition in the Montana Workers' Compensation Court, in which she alleged that she suffered from an occupational disease arising from her employment with Muralt's Travel Plaza. Muralt's is insured by the Respondent, Liberty Northwest Insurance. Schmill contended that because § 39-72-706, MCA, of the Occupational Disease Act required reduction of disability benefits for non-occupational factors, while the Workers' Compensation Act did not, her right to equal protection was violated. The Workers' Compensation Court held that § 39-72-706, MCA, violates the equal protection clause of the United States and Montana Constitutions and awarded Schmill full benefits without reduction for non-occupational factors. Liberty Northwest appeals that conclusion. We affirm the judgment of the Workers' Compensation Court.

¶2 The sole issue on appeal is, whether the Workers' Compensation Court erred when it concluded that § 39-72-706, MCA, violates the equal protection clause of the United States and Montana Constitutions?

FACTUAL AND PROCEDURAL BACKGROUND

¶3 In the Spring of 1999 the Respondent, Cassandra Schmill, had been working at Muralt's Travel Plaza as a waitress for approximately five years when she began experiencing discomfort in her left heal. She was subsequently diagnosed with chronic left Achilles peritendonitis and tendonosis, an occupational disease. Schmill began physical therapy for her condition and filed a temporary total disability claim with Muralt's insurer,

2

Liberty Northwest Insurance. Liberty Northwest accepted the claim pursuant to Montana's Occupational Disease Act. Despite physical therapy and treatment for the pain, her condition did not improve and surgery was performed by Dr. Glenn Jarrett in February of 2000.

¶4 After Schmill reached maximum medical improvement, she was given a 3% physical impairment rating of the whole body by Dr. Jarrett. Dr. Jarrett indicated that it would be difficult for Schmill to walk continuously and a job that allowed her to rest periodically was more appropriate to her condition. In spite of her limitations, Schmill did not suffer an actual wage loss as the result of her occupational disease. Therefore, Schmill requested an impairment award for the disability caused by her occupational disease pursuant to the Workers' Compensation Act. That request was denied by Liberty Northwest. Schmill sought benefits pursuant to the WCA rather than the ODA because the ODA did not provide partial disability or impairment benefits.

¶5 On March 12, 2001, Schmill filed a petition in the Workers' Compensation Court in which she alleged that she was entitled to the same impairment award that was available pursuant to the WCA. Liberty Northwest filed a motion for summary judgment and argued that Schmill's impairment was the result of an occupational disease and that, therefore, she was not entitled by statute to benefits.

¶6 Subsequently, the Workers' Compensation Court issued its decision in *Stavenjord v. State Compensation Ins. Fund*, 2001 MTWCC 25, which required that permanent partial disability benefits be paid to occupational disease claimants pursuant to the WCA. Schmill

filed a response to Liberty Northwest's motion for summary judgment, which cited the Workers' Compensation Court's decision in *Stavenjord* in support of her claims.

¶7    Based on the *Stavenjord* decision, Liberty Northwest agreed to pay Schmill's impairment award. However, Liberty Northwest deducted twenty percent from her award for non-occupational factors that contributed to her disability pursuant to § 39-72-706, MCA. Schmill maintained that she was entitled to a full payment pursuant to the WCA and that the apportionment of benefits pursuant to § 39-72-706, MCA, violated her right to equal protection of the law. The issue that remained for the Workers' Compensation Court was whether the apportionment statute of the ODA, found at § 39-72-706, MCA, violated Schmill's constitutional right to equal protection of the law.

¶8    On June 22, 2001, the Workers' Compensation Court concluded that § 39-72-706, MCA, violated the Montana and United States Constitutions' guarantees of equal protection because it provided disparate treatment to injured workers and those with what are now defined as occupational diseases. Consequently, it held that Schmill was entitled to the full amount of the impairment award without a reduction for non-occupational factors.

STANDARD OF REVIEW

¶9    The Workers' Compensation Court's decision on the merits was based on its construction of constitutional law. Our review of questions of constitutional law is plenary. *In re Custody of Krause*, 2001 MT 37, ¶ 16, 304 Mont. 202, ¶ 16, 19 P.3d 811, ¶ 16. We review conclusions of law to determine whether they are correct. *Henry v. State Compensation Ins. Fund*, 1999 MT 126, ¶ 10, 294 Mont. 449, ¶ 10, 982 P.2d 456, ¶ 10.

4

¶10    All legislative enactments are presumed to be constitutional. *Henry*, ¶ 11. The party challenging the constitutionality of a statute bears the burden of proving the statute unconstitutional beyond a reasonable doubt. *Henry*, ¶ 11.

DISCUSSION

¶11    Liberty Northwest contends that the Workers' Compensation Court erred when it concluded that the ODA's apportionment statute is unconstitutional because the equal protection clause does not require that diseased and injured workers be treated in the same manner. In the alternative, Liberty Northwest maintains that there is a legitimate government interest for apportioning compensation based on the percentage of a disease that is attributable to non-occupational factors. Finally, Liberty Northwest contends that the WCA reduces compensation in a similar fashion and that, therefore, workers are not treated differently by the ODA and the WCA.

¶12    Article II, Section 4 of the Montana Constitution provides that "[n]o person shall be denied equal protection of the laws." The equal protection clause requires that "all persons be treated alike under like circumstances." *Grooms v. Ponderosa Inn* (1997), 283 Mont. 459, 467, 942 P.2d 699, 703. An equal protection claim brought by an injured or diseased worker is reviewed pursuant to the rational basis test. *Henry*, ¶ 33. "The rational basis test requires the government to show (1) that the statute's objective was legitimate, and (2) that the statute's objective bears a rational relationship to the classification used by the legislature." *Henry*, ¶ 33. "'A classification that is patently arbitrary and bears no rational relationship to a legitimate government interest offends equal protection of the law.'" *Henry*, ¶ 36

5

(quoting *Davis v. Union Pacific R. Co.* (1987), 282 Mont 233, 242-43, 937 P.2d 27, 32 (citation omitted)).

¶13　Liberty Northwest argues that the apportionment clause is valid pursuant to this Court's holding in *Eastman v. Atlantic Richfield Co.* (1989), 237 Mont. 332, 777 P.2d 862. In *Eastman* we considered a *pro se* appellant's equal protection challenge of the ODA that was raised for the first time on appeal.　We held Eastman was only entitled to $10,000 pursuant to the ODA because he suffered from an occupational disease despite the fact the WCA would provide greater compensation.　*Eastman*, 237 Mont. at 340, 777 P.2d at 866. We noted that while Eastman was unable to prove an equal protection violation, review of the ODA indicated there were "serious questions which should be addressed by the legislature." *Eastman*, 237 Mont. at 340, 777 P.2d at 866.　In recent years, *Eastman* has been both criticized and distinguished by this Court in *Henry* and *Stavenjord v. Montana State Fund,* 2003 MT 67, 314 Mont. 466, __ P.3d __.　Due to the circumstances of Eastman's appeal, *Eastman* would likely be a non-cite Opinion if decided today.

¶14　In *Henry*, this Court considered the disparate treatment of a worker who suffered a disability as the result of an "occupational disease."　Henry was precluded from receiving vocational rehabilitation benefits by the ODA in spite of the fact that the WCA provided vocational rehabilitation benefits to workers with a similar disability.　*Henry*, ¶ 24.　We noted that when the legislature revised the definition of "injury" and "occupational disease" in 1987, two classes of workers were created which depended solely upon the number of shifts over which an affliction occurred.　*Henry*, ¶¶ 15, 18.　A worker who suffered from a

6

herniated disc that was contracted during one shift was "injured" and entitled to benefits pursuant to the WCA. *Henry*, ¶ 21. However, a worker who developed the same injury over more than one shift suffered from an "occupational disease" and provided fewer benefits pursuant to the ODA. *Henry*, ¶ 21. We concluded that the two classes of workers were similarly situated for equal protection purposes. *Henry*, ¶ 28.

¶15 This Court held that there was no rational basis for treating a worker who contracted a herniated disc during one shift differently than a worker who contracted a herniated disc over more than one shift. *Henry*, ¶¶ 38-40. Economic justifications were dismissed as an insufficient reason to treat the two classes of workers differently and were not considered a legitimate government interest. *Henry*, ¶ 40. We distinguished *Eastman* from *Henry* and stated:

> Second, Eastman filed his claim for compensation benefits in 1985, prior to the 1987 amendments to the WCA and the ODA. As pointed out earlier, after the 1987 amendments to the WCA and ODA, the definitions of "injury" and "occupational disease" no longer focus on the nature of the medical condition, but rather focus on the number of work shifts over which the worker incurs an injury. Thus, the historical justification for treating workers differently under the WCA and the ODA no longer exists. Indeed, the entire underpinnings of *Eastman* have evaporated, rendering its continued validity questionable.

*Henry*, ¶ 43.

¶16 In *Stavenjord v. Montana State Fund*, 2003 MT 67, 314 Mont. 466, __ P.3d __, we recently affirmed the reasoning the Workers' Compensation Court relied upon when it determined the ODA's apportionment clause violated Schmill's right to equal protection. *Stavenjord* followed the reasoning set forth in *Henry* and further questioned the validity of

7

*Eastman*. We recognized that *Eastman* held that a difference in the degree of benefits available to the two classes of workers did not violate equal protection, while *Henry* held that denying one class of worker a specific type of benefit violated equal protection. *Stavenjord*, ¶ 42. However, that distinction was dismissed in light of the 1987 amendments to the ODA and WCA. *Stavenjord*, ¶ 44.

¶17    Consistent with *Henry*, we concluded that the two classes of workers created by the ODA and the WCA were distinguished only by the time over which an affliction was contracted, and that the two classes of workers were similarly situated for equal protection purposes. *Stavenjord*, ¶ 46. We noted that the government's objective pursuant to § 39-71-105, MCA, was to provide a wage loss benefit that was reasonably related to the actual wages lost as the result of a work-related injury or disease and, therefore, concluded that the disparate treatment of workers based upon the time over which their injury or disease was contracted was not reasonably related to the stated governmental interest. *Stavenjord*, ¶ 47 (citing § 39-71-105(1), MCA (1997)).

¶18    For these same reasons, Liberty Northwest's continued reliance on *Eastman* is not well founded. We continue to recognize that the ODA and WCA create two classes of workers: (1) a class of workers who suffer a work-related affliction during one shift; and (2) a class of workers who contract a work-related affliction over more than one shift. *See Stavenjord*, ¶ 46; *Henry*, ¶ 27. We conclude that a worker who seeks an impairment award for a physical impairment caused by an "occupational disease" is similarly situated to a worker who seeks an impairment award for a work-related "injury." The time over which

8

the injury occurred remains the only distinction between the two. Regardless of the time frame over which their affliction was contracted or the name assigned to the affliction, both workers are physically impaired.

¶19     Liberty Northwest cites § 39-71-703, MCA, to support its contention that the WCA apportions non-occupational disability factors in a manner similar to the ODA and that, therefore, the similarly situated classes of injured workers are not treated differently. However, it does not provide any specific reference to the apportionment language relied upon. Nor is it clear how § 39-71-703, MCA, of the WCA and § 39-72-706, MCA, of the ODA apportion non-occupational factors from a worker's impairment award in a similar manner. A plain reading of § 39-71-703(7), MCA, indicates that the provision prevents an injured worker from receiving duplicate coverage. A reduction only occurs, however, when there is a previous injury or disability rating for which the worker already received compensation. Nothing cited by Liberty Northwest suggests that the WCA apportions non-occupational factors in its impairment award calculation. Section 39-72-706, MCA, does require that compensation be reduced by the percentage that an injury is attributable to non-occupational factors. We conclude that the WCA does not apportion a worker's impairment award in the same manner as § 39-72-706, MCA, of the ODA.

¶20     Consequently, we must determine whether the disparate treatment of workers by the ODA apportionment statute is rationally related to a legitimate government interest. Liberty Northwest concedes that the public policy pronouncement in § 39-71-105, MCA, constitutes

the government objective for the WCA and the ODA. Section 39-71-105, MCA, provides in part:

> It is an objective of the Montana workers' compensation system to provide, without regard to fault, wage supplement and medical benefits to a worker suffering from a work-related injury or disease. Wage-loss benefits are not intended to make an injured worker whole; they are intended to assist a worker at a reasonable cost to the employer. Within that limitation, the wage-loss benefit should bear a reasonable relationship to actual wages lost as a result of a work-related injury or disease.

¶21 Liberty Northwest maintains that public policy dictates that compensation is only available for a work-related injury or disease. Therefore, the apportionment statute in the ODA is consistent with public policy because it apportions an impairment award for non-occupational factors.

¶22 Liberty Northwest has missed the point. The WCA does not take non-occupational factors into consideration while the ODA does. The fact that the workers' compensation system seeks to provide benefits for work-related afflictions does not justify treating the two classes of workers identified above differently. The issue before this Court is whether the disparate treatment of workers by the ODA violates Schmill's right to equal protection. We conclude that it does. Liberty Northwest has not demonstrated how treating the two similarly situated classes of workers differently furthers the stated objective of limiting benefits to job related disability.

¶23 We conclude that the ODA and the WCA treat similarly situated classes of workers differently. Furthermore, apportioning Schmill's permanent impairment award for her occupational disease pursuant to § 39-72-706, MCA, of the ODA while providing full

10

benefits for injured workers pursuant to the WCA is not rationally related to a legitimate governmental interest. Therefore, we conclude that § 39-72-706, MCA, violates the equal protection guarantee found at Article II, Section 4 of the Montana Constitution. The judgment of the Workers' Compensation Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER

Chief Justice Karla Gray, dissenting.

¶24    I respectfully dissent from the Court's opinion for the reasons set forth in the dissent in *Stavenjord v. State Fund*, 2003 MT 67, 314 Mont. 466 (Rice, J., dissenting), which I joined.   Applying that rationale to the present case, I would reverse the Workers' Compensation Court's conclusion that § 39-72-706, MCA, violates the equal protection clauses of the United States and Montana Constitutions.  I dissent from the Court's failure to do so.

/S/ KARLA M. GRAY