JUSTICE RICE,
dissenting.
¶32 In my view, the Court has deftly remade the case. It determines an issue that is neither raised by Dvorak nor contested by the parties.
¶33 The Court states the issue to be decided by the WCC and this Court is simply “when Dvorak knew or should have known that she was suffering from an occupational disease.” Opinion, ¶¶ 20, 29. The Court reasons that this issue is ‘hot amenable to summary determination,” reversing the WCC and remanding. Opinion, ¶ 30.
¶34 To the contrary, the issue actually raised, as stated by Dvorak, is whether her “claim for occupational disease benefits was barred by the statute of limitations when she was working up to ten (10) days before she filed her claim and her treating physician opined that her work within the last year of her employment was the major contributing cause of her condition.” (Emphasis added.) In her briefing, Dvorak makes admissions that contradict the Court’s reasoning: Dvorak concedes she knew she was suffering, not just from “a work-related strain or injury,” Opinion, ¶ 25, but from an occupational disease, since February 2006. Her First Report of Injury explained that she had suffered from a “repetitive motion” back and shoulder condition since *184 that date. Dvorak explains her legal position as being that Dr. Reiff determined she had “reached maximum medical improvement for any injury or occupational disease to her cervical or thoracic spine she may have suffered in February 2006 significantly before October 2010,’’and she argues that she “suffered an aggravation of her pre-existing condition by her ongoing work activities within a year of her filing and hence suffered a new compensable occupational disease which was timely filed.” (Emphasis added.) Thus, the issue Dvorak has raised is whether she sustained a new occupational disease that was distinct from her earlier disease, thereby initiating a new one-year statutory filing period. The parties do not contest that Dvorak knew she had suffered from a prior condition that was actionable4;he question is whether something new occurred to trigger a separate and additional filing period. While I wish it was so, this case is not as straightforward as the Court has stated it to be.
¶35 Dvorak posits that she sustained an aggravation of her previously-acknowledged condition that constitutes a new claim. She contends that her work did not become the “major contributing cause” of her current condition until October of 2011, citing the definition of that term in § 39-71-407(9), MCA, which determines the work-relatedness of a disease. However, as the WCC correctly analyzed, the problem with Dvorak’s legal position Is that the major contributing cause analysis goes to whether a condition is compensable as an occupational disease-not whether a worker knew or should have known that she is suffering from an occupational disease.” A further problem is that the evidentiary record simply does not support Dvorak’s claim that she suffered a new occupational disease.
¶36 The WCC was careful to emphasize that “awareness of pain, and awareness that the pain is a result of work” does not alone constitute the necessary knowledge that a worker suffers from an occupational disease. Such requisite knowledge, the court explained, “must mean something more than suffering mere pain, but indicate something more significant, such as a condition requiring medical diagnosis and treatment.” Clearly, Dvorak had an abundance of such knowledge. As the WCC explained:
The undisputed facts demonstrate that although she may not have had a formal diagnosis, Petitioner understood that her condition was caused by “repetitive motion” in her job duties and she received medical treatment, including prescription medication, for approximately five years before she filed her first report of injury or occupational disease. By the time Petitioner *185 began taking prescription medication to alleviate her symptoms, she knew or should have known that she was suffering from an occupational disease. Her claim is therefore untimely ....
¶37 The Court discounts the evidence of Dvorak’s long term use of narcotic pain medication prescribed by Dr. Reiff. Opinion, ¶ 27. However, the Court overlooks the symbiotic correlation between the prescription and Dvorak’s work. The medication was sought by Dvorak in March-April 2006 for work pain and was prescribed for that sole purpose, more specifically, to alleviate problems Dvorak experienced during what she described in her deposition as the ‘lunch rush.”As the WCC noted, ‘Dvorak testified that the only time she experienced pain was while performing overhead activity at work, and that she did not experience pain with other non-work activities.” For all the years thereafter, the medication was renewed on a monthly basis for Dvorak’s back and shoulder pain, and was increased in strength in January 2009, due to an increase in her work-related symptoms.
¶38 The record demonstrates that Dvorak received a continuing course of medical treatment for a work-related, repetitive motion-caused condition to her back and shoulder that worsened over time, but was the same condition. She did not suffer a new occupational disease.
¶39 I acknowledge the Court’s policy concerns about workers who deal with pain during the course of their work, but fail to file a claim. Opinion, ¶ 28. Indeed, it could be questioned whether a one-year statute of limitation has a logical correlation at all to occupational disease claims, which can arise over a long course of time. Of course, it could also be countered that this Court cast that die by striking down the ODA on equal protection grounds for differing from the WCA. See Stavenjord v. Mont. State Fund, 2003 MT 67, 314 Mont. 466, 67 P.3d 229. Regardless of this debate, the Court’s policy concerns were fully addressed by the WCC when it explained that “awareness of pain, and awareness that the pain is a result of work” is alone insufficient to trigger the requirement to file an occupational disease claim. Here, however, Dvorak experienced and knew much more. The law required her to file a claim years before she did.
¶40 The WCC decided the case that was filed before it based upon the issue raised and the applicable evidence. We should do the same. I would affirm.
JUSTICE McKINNON joins in the dissenting Opinion of JUSTICE RICE.