No. 03-346

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 336

DENNIS HAND,

       Petitioner and Appellant,

   v.

UNINSURED EMPLOYERS' FUND,

       Respondent and Respondent,

G. JON ROUSH, d/b/a SWITCHBACK RANCH,

       Employer.

APPEAL FROM:    Workers' Compensation Court, Cause No. WCC 9905-8228
                  The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       Tom L. Lewis, Lewis & Slovak, Great Falls, Montana

       For Respondent:

       Mark E. Cadwallader, Special Assistant Attorney General, Department of
       Labor and Industry, Helena, Montana

               Submitted on Briefs: December 9, 2003

                       Decided: November 30, 2004

Filed:

_____
                 Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Dennis Hand appeals the denial of his claim against the Uninsured Employers' Fund ("UEF") by the Workers' Compensation Court ("WCC"). The WCC concluded that a general release Hand executed which settled his claims against his employer and his employer's general liability insurance carrier likewise released the UEF from liability for Hand's claims. We reverse.

## ISSUE

¶2 Hand presents four issues for review. We conclude, however, that the following restated issue is dispositive:

¶3 Given that UEF failed to perfect an appeal from the Department of Labor and Industry's Order of Determination which concluded that the UEF was liable to Hand for his Occupational Disease, was it error for the WCC to subsequently allow the UEF to raise affirmative defenses in the WCC action?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Hand worked as a ranch hand/manager for G. Jon Roush for approximately 12 years, ending his employment in January 1993. During Hand's employment, Roush was an uninsured employer within the meaning of § 39-71-501, MCA (1991).

¶5 In 1984, Hand fell while loading hay and injured one or both of his knees. Hand apparently did not seek medical treatment at that time. In 1989, Hand was treated by Dr. Patrick R. Robins and reported that he had severely twisted his left knee four years earlier. Hand stated that swelling and pain had continued from the accident onwards, and he was

2

seeking treatment because his condition had recently worsened. Dr. Robins recommended arthroscopic surgery, but it was evidently not performed at that time.

¶6     In September 1992, Hand returned to see Dr. Robins and reported he was having problems with both knees and that his right knee occasionally locked. Dr. Robins recommended an arthroscopic evaluation of Hand's knees. Hand underwent bilateral knee arthroscopy in mid-October 1992, and his knees gradually improved over the next several months.

¶7     On October 10, 1992, Hand filed a claim with the UEF for a back injury. Bernadette Rice, the claims adjuster for the UEF, testified that a narrative attached to the claim mentioned knee problems arising from a 1983 fall. Rice accepted the back claim on behalf of the UEF but denied that the UEF was liable for any knee injury.

¶8     On March 31, 1993, Hand filed a second claim with the UEF in which he claimed he suffered from an Occupational Disease of both knees. The claim was apparently denied, and Hand did nothing further on this claim until 1998.

¶9     At some point prior to September 1995, Hand sued Roush and Roush's wife over back injuries he allegedly suffered during specific incidents on September 18 and October 10, 1992. After a trial, a $550,000 judgment was entered against the Roushes. On September 26, 1995, Hand and the Roushes entered into an Assignment and Agreement in which Hand agreed not to enforce the judgment in exchange for $5,000 and the right to pursue an action against Travelers Insurance Companies--the Roush's general liability insurance carrier. The

3

Agreement stated: "This assignment and agreement does not affect [Hand's] right to proceed with a claim, if any, of [UEF] benefits."

¶10    Hand negotiated a settlement with Travelers Insurance Companies and executed a General Release in exchange for payment of $328,500. The General Release recited specific parties which were released from liability, and added,

> all other persons, firms, or corporations . . . whether herein named or referred to or not, and who, together with the above-named released parties, may be in anywise directly or indirectly liable to me . . . from the beginning of time until the date of this release. This release shall include, but is not limited to, all my claims for damages . . . and compensation of every kind . . . arising from . . . any conduct, acts, or omissions to act by Releasees in . . . various claims of mine arising as a result of injuries that I suffered on or about September 18, 1992 and October 10, 1992 at Florence, Montana, while working for [Roush].

¶11    On November 20, 1998, Hand filed a request for an evaluation of his knee problems by the Occupational Disease Panel. The Department of Labor and Industry ("Department") ordered a medical examination, after which the examining physician concluded that Hand was suffering from an Occupational Disease, but apportioned 75% of Hand's knee problems to injuries rather than disease. Based upon this evaluation, the Department issued an Order of Determination on February 1, 1999, in which it concluded that Hand was suffering from an Occupational Disease and entitled to benefits under the Occupational Disease Act. The Department further concluded that Hand was entitled to 25% of total disability benefits based upon the medical evaluation.

¶12    On February 5, 1999, Hand objected to the 25% recovery apportionment contained in the Order of Determination, and requested a hearing before the Department, pursuant to

4

§ 39-72-612, MCA (1997). The UEF neither filed an objection nor requested a hearing. Subsequently, on April 29, 1999, a Hearing Officer issued an Order and Notice Regarding Jurisdiction which advised the parties that, as of April 23, 1999, § 39-72-612, MCA, had been amended and the Department was required to transfer Hand's case to the WCC unless either party elected to have the case remain in the Department. Neither elected to do so, and the Department transferred the case to the WCC on May 24, 1999.

¶13   The WCC conducted a hearing on March 6, 2002. In the WCC hearing, Kathy Ann Brown, the supervisor of the UEF, conceded that the UEF did not appeal from the Department's Order of Determination, including its finding that Hand had an Occupational Disease. The WCC issued its Findings of Fact, Conclusions of Law, and Judgment ("Judgment") on August 28, 2002. The WCC stated the issues as: whether the UEF is precluded from asserting defenses to the claim for Occupational Disease benefits because it neither "appealed" nor "cross-appealed" from the February 1, 1999, Order of Determination; and, whether the general release Hand executed bars his claim for Occupational Disease benefits from the UEF.

¶14   In its Findings of Fact and Conclusions of Law, the WCC concluded that the 1999 amendments which transferred the case to the WCC before the Department conducted a contested case hearing, meant that the Order of Determination never became a "final order," and thus the UEF was not precluded from raising affirmative defenses for the first time in the WCC. The WCC determined that, because the provisions governing Occupational Disease proceedings are procedural, the 1997 version of the Occupational Disease Act

5

applied to three events--Hand's request for a panel examination, the issuance of the Department's Order of Determination, and Hand's request for a contested case hearing. However, the WCC further determined that the 1999 version of the Occupational Disease Act governed the events which took place from April 23, 1999, onward, and thus, with the repeal of §§ 39-72-611 and -612, MCA (1997), the WCC became vested with original jurisdiction over Occupational Disease disputes, pursuant to § 39-72-602(2)(c), MCA (1999).

¶15    Noting that, pursuant to § 39-72-602(2)(c), MCA (1999), the WCC requested and received a Summary of Contentions from both Hand and the UEF, respectively, within the 20-day time period legislated by that statute. The WCC then characterized those Contentions as pleadings, rather than as issues appealed from the Department's Order of Determination.

¶16    Taking Hand's and the UEF's Contentions into account, the WCC made findings and conclusions on the Contentions presented by the UEF which will be detailed below to the extent necessary to support this Opinion.

¶17    The WCC concluded that Hand's settlement of his civil action released and barred his Occupational Disease claim, and that therefore the UEF was not liable for Hand's Occupational Disease. Hand timely appealed to this Court.

**STANDARD OF REVIEW**

¶18 We review the findings of fact of the WCC to determine if they are supported by substantial, credible evidence, and we review its conclusions of law to determine if they are correct. *Geiger v. Uninsured Employers' Fund*, 2002 MT 332, ¶ 13, 313 Mont. 242, ¶ 13, 62 P.3d 259, ¶ 13 (citations omitted).

**DISCUSSION**

¶19 Given that the UEF failed to perfect an appeal from the Department of Labor and Industry's Order of Determination which concluded that the UEF was liable to Hand for his Occupational Disease, was it error for the WCC to subsequently allow the UEF to raise affirmative defenses in the WCC action?

¶20 Hand argues that the UEF did not raise the substantive release issue before the Department, and it was error for the WCC to allow the UEF to raise it at later stages of the proceedings. He claims the Department's Order of Determination is a final order and cannot be appealed unless a request for hearing is presented within 20 days of the date the Department issues the Order of Determination, pursuant to § 39-72-612, MCA (1997). Therefore, he argues, the WCC had no authority to disturb the Department's conclusion that Hand is entitled to Occupational Disease benefits. Hand further asserts that the UEF's failure to request its own review of the Order of Determination means that the only issue properly before the WCC was the one raised and identified by Hand: the 25% apportionment of his total disability benefits.

¶21 The Department's Order of Determination states in pertinent part:

7

The parties were given an opportunity to request a reexamination of the claimant or a hearing prior to the Department's Order of Determination, but no such request has been received. . . .

[T]he Department concluded the claimant is suffering from an occupational disease and is entitled to benefits under the Occupational Disease Act.

IT IS THEREFORE ORDERED the claimant is entitled to . . . 25% . . . of their total disability benefits if they suffer a total wage loss as a result of the occupational disease. The claimant is also entitled to medical and hospital expenses directly related to their occupational disease. . . .

Pursuant to 39-72-612, MCA, the parties are hereby notified a party adversely affected by this Order of Determination has twenty (20) days from the date of this Order to request a hearing before the Department of Labor & Industry Legal Division. . . . A hearing must be requested in order to perfect an appeal to the Workers' Compensation Court. . . .

¶22 The UEF claims that the Order of Determination was not a final order, and thus Hand's request for a hearing was not an "appeal" pursuant to § 39-72-612, MCA (1997), but rather a request for an initial hearing pursuant to § 39-72-611, MCA (1997). The UEF adds that it was not until further proceedings were held in the WCC that a "trial" took place. The UEF claims that, because neither Hand nor the UEF elected to remain in the Department's contested case process, the first and only hearing on Hand's Occupational Disease claim took place in the WCC on March 6, 2002. Thus, the UEF concludes, the WCC correctly allowed the UEF to raise its affirmative defenses in the WCC action.

¶23 Both the 1997 and 1999 versions of § 39-72-602, MCA, set forth the procedure to be followed after the Department receives the medical evaluator's report. In Hand's case, this report was filed on January 6, 1999. On that date, the 1997 version of the statute remained in effect. Section 39-72-602(2)(c)(i), MCA (1997), states, "If a second examination is not

8

requested, the department shall issue its order determining whether the claimant is entitled to occupational disease benefits. . . ." No second examination having been requested, the Department issued an Order of Determination pursuant to § 39-72-602, MCA (1997), in which the Department concluded that Hand was entitled to benefits arising out of his Occupational Disease.

¶24 Section 39-72-602(2)(c), MCA (1999), states, "Upon receipt of the [medical evaluator's] report, if a dispute exists over initial compensability of an occupational disease, it is considered a dispute that, after mediation pursuant to department rule, is subject to the jurisdiction of the [WCC]." It is this version of the statute which the WCC concluded applied. However, the Department received the medical evaluator's report *four months* prior to the April 23, 1999, effective date of this statute. Thus, the procedural rules contained in the 1997 statutes clearly governed.

¶25 We thus conclude the WCC erred when it retroactively applied the 1999 version of this statute to an event which occurred during the time when the 1997 version was in effect. Just as it concluded that other events in Hand's case occurred under the 1997 procedural statutes--see ¶ 14, above--the WCC likewise should have addressed the issuance of the medical evaluator's report by the Department under the 1997 version of the applicable procedural statutes, because the receipt of the report and the Department's consideration of that report's effect on Hand's case both occurred well within the time period in which § 39-72-602, MCA (1997), was in effect. In fact, this 1997 process was correctly followed by the Department, which issued a subsequent Order of Determination.

9

¶26    Both Hand and the UEF claim *Epperson v. Willis Corroon Administrative Services Corporation* (1997), 281 Mont. 373, 934 P.2d 1034, supports their position as to whether the February 1, 1999, Order of Determination became a "final order" pursuant to § 39-72-612, MCA (1997). We conclude that our Opinion in *Epperson* supports the result we reach here. The language of the Order of Determination is dispositive. It states that the parties have 20 days to request a hearing, pursuant to § 39-72-612, MCA, and that "[a] hearing must be requested in order to perfect an appeal to the [WCC]." Hand perfected his appeal; the UEF did not. The Order then became final. The UEF cannot now take advantage of a new procedural law which did not come into effect until *after* its 20-day period in which to request a review expired.

¶27    The Order of Determination, as it pertained to liability, became final 20 days after the February 1, 1999, issuance of the Order of Determination. By failing to timely request a hearing so as to perfect its appeal, the UEF lost the opportunity to request a review of the Department's findings and conclusions. Thus, we conclude the WCC erred in allowing the UEF to raise substantive affirmative defenses when the matter was heard in the WCC.

¶28    Finally, we address the apportionment issue which was the subject of Hand's initial request for review of the Department's Order of Determination. In its February 1, 1999, Order of Determination, the Department concluded that Hand was entitled to 25% of his total disability benefits if he suffered a total wage loss as a result of his Occupational Disease. Since that time--as recognized by the WCC and conceded by the UEF--this Court, in the case of *Schmill v. Liberty Northwest Insurance Corp.,* 2003 MT 80, ¶ 23, 315 Mont. 51, ¶ 23, 67

P.3d 290, ¶ 23, held that § 39-72-706, MCA, which allowed for apportionment of Occupational Disease benefits, while the apportionment of benefits awarded for a "work-related injury" was statutorily prohibited, violated the equal protection guarantee found at Article II, Section 4 of the Montana Constitution. Therefore, applying *Schmill* to this case, which was still open for review when *Schmill* was decided, we conclude that Hand is entitled to 100% of his total disability benefits if he suffers a total wage loss as a result of his Occupational Disease.

## CONCLUSION

¶29 For the foregoing reasons, we reverse the August 28, 2002, Findings of Fact, Conclusions of Law, and Judgment of the Workers' Compensation Court, and remand for further proceedings consistent with this Opinion.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ JOHN W. WHELAN
Honorable John W. Whelan, District Court Judge
sitting for Justice Jim Regnier

11