JUSTICE NELSON
concurs and dissents.
¶67 I concur with our decision as to Issue One. I disagree with our resolution of Issue Two and, therefore, dissent. I would affirm the Workers’ Compensation Court as to both issues.
¶68 Issue Two turns on a statute that contains a time period for advancing an appeal. This time period begins to run, as do all statutory time periods, upon the existence of certain specified conditions. Here, the statute at issue provides that the existence of a “dispute” is a prerequisite condition for the running of this time period. Thus, the “dispute” requirement is just that-a requirement. It is not a condition which courts are free to disregard when they see fit. Yet, the Court has ignored this requirement, and has effectively undercut the legislature’s public policy determination regarding our interpretation of Workers’ Compensation laws.
¶69 Five things are undisputed as to Issue Two. First, the UEF-bhe State agency in charge of correctly calculating UEF benefits-made an error in calculating Mrs. Forgey’s benefits. This error substantially impacted her benefits by reducing the calculation of Mr. Forgey’s average weekly wage from $443.00 to $300.00-a 32% reduction. Second, the UEF stipulated that it made the error and that the error should be corrected. Third, Mrs. Forgey not only did not know of the error-she relied on the State agency charged with correctly calculating her benefits-but also, and more importantly, by the time she, through her attorney, discovered the error, her cross-appeal time had long since passed. Fourth, upon discovering the error, Mrs. Forgey immediately notified the UEF and Colmore’s counsel and filed a motion to correct the clerical error. Fifth, Colmore stipulated that the UEF’s initial benefit calculation was flawed, and that Mr. Forgey’s average weekly wage was in fact $443.00. The error at issue here was simply a ministerial mistake unilaterally made by the agency and mutually acknowledged by the UEF, the claimant, and the uninsured employer. There was no dispute involved and none to appeal.
Statutory Interpretation
¶70 Section 39-71-520, MCA (1999), requires that a “dispute” concerning uninsured employers’ fund benefits must be appealed to mediation within ninety days from the date of determination or the determination is considered final. Here, there was no “dispute” at issue during the ninety days after the UEF’s benefit determination because Mrs. Forgey, not surprisingly, was unaware that the UEF had erred *460 in computing her benefits. Indeed, there was a mutual mistake of fact[1] by both the UEF and Mrs. Forgey as to the determination of benefits-both parties thought the benefit amount was computed correctly, but both parties were wrong. While §39-71-520, MCA (1999), provides specific guidelines for the resolution of disputes over benefit calculations, it says nothing of corrective re-calculations where no such dispute has ever existed. Nonetheless, the Court disregards the plain language of the statute and thereby bars a re-calculation of benefits based on an average weekly wage of $433.00-a figure which Colmore, Mrs. Forgey, and the UEF have all agreed is correct.
¶71 The Court fails to acknowledge that resolution of this issue requires statutory interpretation and, consequently, fails to utilize or cite to any rules of statutory construction in rendering its simplistic interpretation of the statute at issue here. This failure is necessary to the Court’s Opinion, because not a single rule of statutory construction supports its interpretation of §39-71-520, MCA (1999). Moreover, this failure is indicative of the Court’s casual approach to the interpretation of this statute, which amounts to nothing less than a revision thereof.
¶72 Proper interpretation of this statute requires that we first consider what a “dispute”is. The Workers’ Compensation Act does not define this term. Black’s Law Dictionary, 8th Edition, defines a “dispute” as a “conflict or controversy, esp. one that has given rise to a particular lawsuit.” In turn, Black’s defines a “controversy” as a “disagreement or a dispute” and a ‘justiciable dispute.” Further, Black’s defines a “disagreement” as a “difference of opinion” or a “quarrel.” These definitions indicate that a “dispute” can not exist unless a party expresses an argument. Such an expression is inherent in the existence of a “controversy” or “disagreement” and is, of course, necessary to the existence of any lawsuit. In other words, the very nature of a “dispute” is the clashing of stated ideas or claimed positions. This conclusion is supported by Black’s definition of a justiciable dispute as a dispute that is “capable of being disposed of judicially.” Obviously, no dispute can be “disposed of judicially” without an expression of argument from at least one party, which is initially made in the pleadings, because no court can take notice of a dispute unless it is presented by way of an expression of argument.
*461 ¶73 Our jurisprudence regarding the issue of standing provides further support for the conclusion that a “dispute” necessarily entails an expression of argument. Standing is a threshold issue in every case. In re Parenting of D.A.H., 2005 MT 68, ¶ 7, 326 Mont. 296, ¶ 7, 109 P.3d 247, ¶ 7. ‘TA] court that would otherwise have jurisdiction to hear and decide a matter will not have jurisdiction if a person without standing attempts to bring the action.” In re Parenting of D.A.H., ¶ 8. As our case law holds:
In the context of challenges to government action, we have stated that the following criteria must be satisfied to establish standing: (1) The complaining party must clearly allege past, present or threatened injury to a property or civil right; ....
Armstrong v. State, 1999 MT 261, ¶ 6, 296 Mont. 361, ¶ 6, 989 P.2d 364, ¶ 6 (emphasis added). Thus, we see that no judicially cognizable dispute exists without an expression of argument.
¶74 Based on the foregoing, I conclude that a “dispute” necessarily entails an expression of argument. That is not to suggest that this conclusion should be the starting point of reference in every consideration of the term “dispute.” This term appears in various statutes throughout the Workers’ Compensation Act, and may well take on different nuances of meaning depending on the context and manner in which it is used. Here, the term “dispute” is used in a unique and primary fashion-i.e., it is designated as the event which triggers the running of the ninety-day time period for appeal. As such, I believe it is necessary to consider the essence of a “dispute” in order to determine whether one occurred here.
¶75 Neither Colmore nor Mrs. Forgey expressed any argument regarding the UEF’s determination of benefits during the ninety days after the initial calculation. Because no arguments were expressed, no dispute existed. The fact that a mistake had been made does not establish the existence of a dispute. Further, to the extent we can attach any meaning to the silence of the parties, it appears that all were in agreement regarding the benefits determination. The Special Concurrence claims that the natural conclusion of this reasoning would spell the end of statutes of limitations. This hyperbole demonstrates either a failure to recognize or, worse, the bald refusal to acknowledge the unique nature of the statute at issue. More to the point, an interpretation of §39-71-520, MCA (1999), which gives effect to its unique use of the term “dispute” would have no bearing on a statute that does not employ that term in the context used here.
¶76 Having found some meaning in the term “dispute,” a word which *462 the Court apparently refuses to recognize, I now turn to the consequences of such meaning in light of the rules of statutory construction.
¶77 In construing a statute, the intent of the legislature is controlling, and such intent must first be determined from the plain meaning of the words used. Security Bank v. Connors (1976), 170 Mont. 59, 66-67, 550 P.2d 1313, 1317. Here, the plain meaning of the words at issue indicate that only “disputes” must be appealed to mediation within ninety days. The term “dispute” precedes and qualifies the requirement of appeal in this statute. Thus, a claimant has no duty to appeal if no dispute exists.
¶78 If we are to allow this term to retain any meaning apart from the term “agreement,” which is essentially what Mrs. Forgey and the UEF had reached pursuant to a mutual mistake of fact, we must conclude that §39-71-520, MCA (1999), designates an appeal time for “disputes” only. As the Special Concurrence notes, our obligation is to apply the law as it is written. In doing so, we must recognize that the term “dispute” has some meaning which is consequential in the operation of the statute. Unfortunately, the Court and the Special Concurrence choose to render this term meaningless.
¶79 General rules of statutory construction require this Court to interpret the statutory language before us without adding to it or subtracting from it. Orr v. State, 2004 MT 354, ¶ 68, 324 Mont. 391, ¶ 68, 106 P.3d 100, ¶ 68. Here, the Court engages in either significant addition to or subtraction from § 39-71-520, MCA (1999), thereby rewriting it. It appears that the Court has either removed the term “dispute,” which is a prerequisite to the application of this statute, or has added some other undisclosed phrase which renders the term “dispute”meaningless. In other words, the Court’s approach requires us to either: (1) assume that a “dispute” exists immediately and in every single case; or (2) ignore the “dispute” requirement altogether.
¶80 Words and phrases used in the statutes of Montana are construed according to the context in which they reside. Orr, ¶ 68. The Court treats § 39-71-520, MCA (1999), as a typical statute of limitations. However, the legislature clearly set this statute apart from the general statute of limitation governing presentment of claims under the Workers’ Compensation Act, which appears just a few code sections after the statute at issue in the case sub judice. That statute of limitations provides:
In case of personal injury or death, all claims must be forever barred unless signed by the claimant or the claimant’s *463 representative and presented in writing to the employer, the insurer, or the department, as the case may be, within 12 months from the date of the happening of the accident, either by the claimant or someone legally authorized to act on the claimant’s behalf.
Section 39-71-601(1), MCA (1999) (emphasis added). Obviously, this provision includes more comprehensive and restrictive language than is used in the statute at issue here, in that it clearly bars any recourse for all claims not pursued within the applicable time period. If the legislature had intended that §39-71-520, MCA (1999), be treated as a typical statute of limitations, thereby operating to bar any recourse not pursued within ninety days from the time of initial benefit calculation, then the legislature would have undoubtedly used language similar to that of §39-71-601(1), MCA (1999), as it has done with the various other statutes of limitations found in Montana’s code. Instead, the legislature chose to qualify §39-71-520, MCA (1999), with the term “dispute,” as opposed to the phrase “all claims,” thereby rendering it significantly distinct from a typical statute of limitations. We should honor that choice by giving effect to the term “dispute” which qualifies the rest of the language in the statute. The Court’s refusal to do so amounts to nothing less than a judicial revision of §39-71-520, MCA (1999).
¶81 When considered in the context of the Workers’ Compensation Act, particularly with reference to the Act’s statute of limitations, it becomes abundantly clear that the legislature did not intend that §39-71-520, MCA (1999), operate as a typical statute of limitations. I conclude that the Court’s statutory construction here is flawed because it makes §39-71-520, MCA (1999), and §39-71- 601(1), MCA (1999), operate in the same way despite their substantial facial differences. ¶82 As we have previously stated:
Courts have developed many principles for interpreting statutes. Each principle is designed to give effect to the legislative will, to avoid an absurd result, to view the statute as a part of a whole statutory scheme and to forward the purpose of that scheme.
Orr, ¶ 25. Here, the Court’s interpretation has undermined each one of these principles. Disregarding the plain meaning of the term “dispute” thwarts the legislative will expressed through the unique structure of this statute. Further, an absurd result obtains in that the UEF is denied the opportunity to make a remedial calculation of benefits which it argues would be proper, thereby denying a widow the *464 full measure of the statutorily established death benefit because of a mutual mistake of fact. Finally, the Court’s interpretation assigns §39-71-520, MCA (1999), the same meaning as the general statute of limitations of the Workers’ Compensation Act, ignoring the distinct nature of the two statutes and thereby failing to view this statute as a part of a whole statutory scheme. In short, the rules of statutory interpretation call for a different result than the Court has reached.
¶83 The Special Concurrence concludes that our decision in Hand v. Uninsured Employers’ Fund, 2004 MT 336, 324 Mont. 196, 103 P.3d 994, is analogous to the present case. Our resolution of that case was premised on § 39-72-612(1), MCA (1997). That statute specifies a twenty-day time period in which a party may perfect an appeal. This time period begins to run upon the existence of one condition: the issuance of an order of determination regarding benefit entitlement. Section 39-72-612(1), MCA (1997), contains no reference to the existence of a “dispute,” and is thus distinctly different from the statute we consider here. Indeed, this argument typifies the sort of imprecise and scattershot analysis employed by the Court itself. As such, reliance on the reasoning of Hand is misplaced.
¶84 Finally, the Court’s resolution of this appeal is based in part on a mis-characterization of Mrs. Forgey’s arguments. The Court states Mrs. Forgey has argued that she was relieved of her statutory duty to cross-appeal the benefits calculation because Colmore timely appealed the UEF’s decision to grant benefits. This theory is created out of thin air to bolster a sought-for result. Neither Mrs. Forgey nor the UEF have made any argument remotely similar to this. Nor have they even hinted at taking such a position. While I disagree with the Court’s decision in this appeal, and while I disagree even more vigorously with the manner in which the Court reaches its decision, I can not overstate my objection to this plain mis-characterization of Mrs. Forgey’s arguments. It is simply wrong, and it deserves no place in the Court’s Opinion.
Public Policy as a Guide for Interpretation
¶85 Not only has this Court misinterpreted §39-71-520, MCA (1999), it has also ignored the legislative mandate for the interpretation of such statutes and thereby contravened the public policy of this State. The legislature has provided clear guidance to this Court regarding the interpretation of the statute at issue:
39-71-105. Declaration of public policy. For the purposes of interpreting and applying Title 39, chapters 71 and 72, the following is the public policy of this state:
*465 (3) Montana’s workers’ compensation and occupational disease insurance systems are intended to be primarily self-administering. Claimants should be able to speedily obtain benefits, and employers should be able to provide coverage at reasonably constant rates. To meet these objectives, the system must be designed to minimize reliance upon lawyers and the courts to obtain benefits and interpret liabilities.
Section 39-71-105(3), MCA (1999) (emphasis added). In spite of the legislature’s clear direction that our statutory interpretation should be guided by the principle of minimizing reliance upon lawyers and the courts, this Court’s interpretation actually invites reliance upon lawyers in the determination of proper benefits, and thereby ensures the involvement of the courts. Clearly, the legislature did not intend that professional legal assistance, with its attendant expense, should be necessary to the resolution of a benefits calculation. Yet, under this Court’ Opinion, widows like Mrs. Forgey will either have to become proficient in the fine points of benefit calculation, or employ professional legal assistance in order to determine whether the UEF has rendered an accurate calculation, rather than depending on the UEF to properly calculate benefits or at least make proper re-calculation when necessary.
¶86 Stated another way, the Court’s interpretation renders irrevocable a miscalculation accomplished pursuant to a mutual mistake. This result demands that both claimants and uninsured employers secure legal expertise to verify the UEF’s initial calculation, or risk living under an erroneous decree. Yet, the statutory scheme does not indicate that such mistakes must be blindly adhered to in perpetuity. As noted above, the plain meaning of §39-71-520, MCA (1999), discloses nothing that bars a remedial adjustment of benefits in cases where no dispute exists. Moreover, to allow for remedial adjustment is to minimize the need for both claimants and uninsured employers to rely on professional legal assistance in verifying the UEF’s initial calculation. This approach would honor Montana’s explicitly stated public policy of minimizing reliance on lawyers so as to make the workers’ compensation system “primarily self-administering.” Section 39-71-105(3), MCA (1999).
¶87 In an apparent effort to pay tribute to the legislature’s guidance regarding our statutory construction, the Court states that the UEF’s letter to Mrs. Forgey, which apprised her of her benefit calculation, was “easily read by a layperson,” was written in “plain English,” and *466 was designed to inform her of her benefits "without the necessity of hiring a lawyer.” Setting aside the vast differences in education, literacy, reading comprehension, and sophistication[2] that characterize our citizenry, these speculative conclusions are not at all relevant to the legislature’s directions to this Court. It is our interpretation of statutes that should minimize reliance upon lawyers, and our execution of that task is unrelated to the quality of the UEF’s correspondence with claimants. Moreover, it is poor precedent to even suggest that the language chosen by bureaucrats in correspondence can effectively amend clear and unambiguous statutory language chosen by the legislature.
¶88 From the remoteness and safety of our chambers, and with the benefit of hindsight, the Court deftly pinpoints the error of the UEF’s calculation. The Court then proceeds to conclude that Mrs. Forgey could have easily done the same. The Special Concurrence goes so far as to assert that even the “numerically challenged” could have readily detected the error. Obviously the concurring Justice’s problems with mathematics are completely irrelevant. No doubt, though, her conclusion might well be different if she, as a blue-collar widow, had to detect the error while grieving the death of her blue-collar husband during the process of applying for meager benefits to help feed her two children.
¶89 Additionally, the Special Concurrence asserts that the UEF’s letter of determination "set forth precisely how the calculation was performed.” In fact, the UEF’s explanation was anything but precise. The last step of the calculation explained in the letter contains a two-thirds multiplier which reduced the average weekly wage figure and, in turn, reduced Mrs. Forgers overall benefit. The letter includes no explanation for this significant reduction. Rather, the calculation is surrounded by references to more than half a dozen workers’ compensation statues, leaving the reader to engage in relatively sophisticated legal analysis in order to decipher the UEF’s calculation. Thus, in justifying the conclusion that virtually anyone could have easily detected the UEF’s calculation error, the Special Concurrence has improperly minimized the nature of the problem Mrs. Forgey faced.
¶90 It is this kind of approach which engenders the sentiment that *467 appellate judges reside in ivory towers, rendering opinions without due regard for the realities facing ordinary citizens. Moreover, the contention that Mrs. Forgey could have deciphered the UEF’s calculation in the exercise of “ordinary diligence” rings hollow, given that the Court’s initial draft of its Opinion contained glaring errors which demonstrated a fundamental misunderstanding of the calculation.
¶91 Finally, the Special Concurrence bases part of its reasoning on the demonstrably false assertion that Mrs. Forgey “competently and correctly filled out the simple UEF claim form.” Upon this assertion, the Special Concurrence posits that Mrs. Forgey could have ‘just as easily and competently” recognized the UEF’s mistake. In fact, however, Mrs. Forgey failed to specify the date Mr. Forgey was hired. As the UEF stated in a brief to the Workers’ Compensation Court, it was precisely this failure which resulted in the UEF’s miscalculation.
‘Ordinary Diligence”
¶92 The Court declares that Mrs. Forgey should have discovered the UEF’s miscalculation in the exercise of “ordinary diligence.” In doing so, the Court refers to the rule that a statute of limitations for actions based on mistake begins to run when the facts are such that the party seeking relief would have discovered the mistake in the exercise of ordinary diligence. This rule is wholly irrelevant because we are not dealing with a statute of limitations for actions based on a mistake. Rather, we are dealing with a statute that explicitly designates the existence of a “dispute” as a prerequisite condition for the running of the time period for appeal. Therefore, the “ordinary diligence” standard has no bearing on the case at bar.
The ‘Right” to Rely
¶93 Before Mr. Forgey’s death, Colmore failed to secure workers’ compensation insurance, and thereby failed to comply with the legal requirement designed to protect families like the Forgeys in case of an untimely death of the household breadwinner. Now that he has been called to account for this failure, Colmore attempts to avoid the full responsibility that attends such disregard for the law. In doing so, he offers a statutory interpretation that distorts the law at issue and effectively contravenes the stated public policy underlying the Workers’ Compensation Act-fchat wage-loss benefits should “bear a reasonable relationship to actual wages lost as a result of a work-related injury or disease.” Section 39-71-105(1), MCA (1999). ¶94 In accommodating Colmore’s effort to avoid full responsibility for his disregard of the law, the Court declares that Colmore ‘had the *468 right to rely on the amount fixed” by the UEF. The Court cites no authority for this bare assertion, because none exists. The Court has simply concocted a ‘right”to rely on the UEF’s miscalculation, without providing a supporting analysis and without reference to a single legal authority. Consequently, this new ‘right”appears to have been created solely for the purpose of resolving this appeal in favor of the uninsured employer. Obviously, Colmore had no legal right to rely on the miscalculation which denied Mrs. Forgey her proper benefits. He had no more right to rely on that miscalculation than he had a right to employ Mr. Forgey without securing workers’ compensation insurance coverage. Simply put, there is no injustice in requiring Colmore to pay the undisputedly correct amount of death benefits. The true injustice lies in denying a widow her statutory death benefits based on a vague notion of reliance which is unsupported by a single reference to legal authority.
¶95 The Court apparently feels no obligation to account in any way for its nonchalant creation of this ‘right.” One wonders: does this ‘right” emanate from a statute or from a constitution? Or does this ‘right” have its basis in equitable considerations? If so, why does the Court feel compelled to bestow such privilege upon an uninsured employer in the name of equity, without bothering to mention the equitable concerns inherent in denying the statutorily established measure of death benefits to a widow with two children? Or, may we ask, what principle of equity is served by reducing Mrs. Forgey’s death benefits so as to add to Colmore’s six-figure tax deduction?
¶96 As the Court has not seen fit to disclose the basis for this ‘right,” it shall apparently remain a mystery to courts and practitioners alike. This Court is remiss in its duty when it resorts to cavalierly creating rights out of whole cloth without reference to one shred of legal precedent. In this case, the Court’s impulsive creation of a ‘right”has allowed the uninsured employer to evade the hand of justice, and thereby reap a windfall at the expense of Mrs. Forgey and her two children.
Distinguishing Precedent
¶97 The rule established in Joseph Eve & Co. v. Allen (1997), 284 Mont. 511, 945 P.2d 897-a case of first impression, incidentally-involved a procedural background and an issue wholly dissimilar to the one at bar. In Joseph Eve & Co., the respondent, Allen, moved to dismiss an appeal on the ground that the lower court’s judgment was not final. Joseph Eve & Co., 284 Mont. at 512, 945 P.2d at 897. We denied the motion, and two days later Allen filed her *469 motion for leave to file a cross-appeal with this Court. Joseph Eve & Co., 284 Mont. at 512, 945 P.2d at 897. By then the fourteen-day time limit in which to file a cross-appeal had expired. Joseph Eve & Co., 284 Mont. at 512, 945 P.2d at 897-98. In Joseph Eve & Co., there was an issue of law from which to cross-appeal-the finality of the trial court’s judgment. There was a “dispute.” In the case suhjudice there was no issue of law from which to cross-appeal, only a mutual mistake of fact, acknowledged by all parties, that was just as capable of ministerial correction as it had been made, ministerially, in the first place. The Court’s conclusion to the contrary, Mrs. Forgey had no “duty”to appeal until she had a “dispute” with the UEF’s decision.
Conclusion
¶98 As noted above, §39-71-105(1), MCA (1999), provides that the objective of the workers’ compensation system is to provide wage loss benefits that bear a reasonable relationship to actual wages lost as a result of a work-related injury. Under the law, Mrs. Forgey was and is entitled to benefits based on an average weekly wage of $443.00. In its decision here, the Court has handed the uninsured employer a windfall, denied a widow the benefits to which she is entitled under the law, and, in misapplying the law, has frustrated the public policy of this State as articulated by the legislature. This is accomplished in part by the use of a newly created “right to rely” on UEF miscalculations which is unsupported by legal precedent, a wholly irrelevant “ordinary diligence” standard, and a plain misrepresentation of Mrs. Forgey’s argument on appeal.
¶99 I dissent.
JUSTICE COTTER joins in the concurrence and dissent of JUSTICE NELSON.

 Mrs. Forgey did not have a college education, any legal training, or any judicial experience. She graduated high school and worked as a house cleaner and a ranch hand.